INDUSTRIAL LUMBER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29977.   Promulgated July 30, 1930.

*W. W. Spalding, Esq.*, for the petitioner.
*B. M. Coon, Esq.*, for the respondent.

**OPINION.**

LANSDON: We have for consideration here two inventories, each purporting to have been made upon basic values of cost or market, whichever was lower. In the original inventory the petitioner separately assigned to each of the five grades of lumber in stock its then prevailing market price. With these prices, which varied from the highest for "B-and-better" grade to the lowest for grade "4" common, it compared a so-called average cost unit price, which applied equally to each board foot of lumber in its entire stock, without regard either to actual cost of production or market price. In other words, it applied the actual sale price for market, but not the

actual cost price for cost. In the *Eatonville Lumber Co.*, 10 B. T. A. 232, where the respondent urged the use of this system, we held that it would be accurate "only if the ratio between the total quantity produced and the quantity of each grade produced equaled the ratio between the total inventory list and the grade inventory list." There is no claim here that these ratios, by grade or otherwise, between production and final inventory have been maintained or could be maintained under the methods followed by the petitioner. The record does show, however, a wide disparity in actual cost of production of a considerable portion of the petitioner's stock, as, for example, in the cases of bridge timbers and railroad beams, and in the kiln-dried dressed lumber. The first of these, which constitutes 25 per cent of the mill output, is marketable green from the mill without further cost, while the latter requires additional processing and repeated handling, which not only adds to the expense, but degrades and decreases the quantity of merchantable lumber at each successive step.

In *Rockwell Manufacturing Co.*, 19 B. T. A. 277, where the taxpayer had first inventoried its lumber by using the average unit cost rather than the actual cost of each separate grade, we allowed it to amend its return and substitute the latter, upon the ground that it more nearly reflected the true income. We think, under the facts shown, that the respondent was justified in applying the same rule in his audit of the petitioner's return in this instance and his act in rejecting the inventories offered must be approved. *Eatonville Lumber Co., supra.*

In respect to the amended inventory, which is based upon values obtained by comparison of the grand totals of the actual cost and market value of every item of the petitioner's stock on hand, without regard to grade, the respondent and petitioner are in accord, except as to the reductions claimed from these values on account of estimated losses which the petitioner claims its business experience shows it must ultimately sustain on account of degrading, wastage, and discount before it can convert its stock into cash. In support of its claim for allowance of these deductions the petitioner introduced evidence to show that inventories, by board measure, made of lumber as it comes green from the mill and is placed in the pile, of necessity includes much unmerchantable lumber; also, that in further process and successive handling, unavoidable loss is sustained through trimming and breakage which greatly reduces the board footage of original inventories. The petition further establishes that a shrinkage in value of its stock is likewise sustained through successive degradings; also that time required in curing and processing, at least a part of its stock, is from 90 to 120 days. These facts, it contends, entitle it to now take the losses claimed, based upon estimates, and

cites our decisions in *Hutchins Lumber & Storage Co.*, 4 B. T. A. 705; *May Lumber Co.*, 13 B. T. A. 62; *Justus & Parker Co.*, 13 B. T. A. 127; and *Holeproof Hosiery Co.*, 11 B. T. A. 547, in support thereof.

The character of the stock included in the petitioner's inventories is so essentially different from that invoiced in the cases cited that we are unable to accept such decisions as authority to support the method sought to be employed here. There are other facts also which differentiate those cases from the one at bar and make our conclusion therein inapplicable to the facts in this proceeding. The appellants in the *Hutchins Lumber & Storage Co.* and the *May Lumber Co.* cases were not manufacturers of lumber. Nor did either include in its inventory any raw or unfinished product. They were dealers in finished lumber bought at a definite price, after the losses here sought to be determined had been sustained by the manufacturer and no doubt absorbed in that price. The complicated questions, therefore, of loss in processing through trimming, shrinkage, degrading, etc., were in no way involved, nor was actual cost in doubt. In the *Hutchins Lumber Co.* case, *supra*, the unsalable lumber was taken out of the stacks and counted piece by piece. The loss was not only sustained, but the quantity of damaged lumber was determined. In the *May Lumber Co.* appeal *supra*, the question was one of loss to stock held in reserve by a planing mill and although an estimate of the amount of this loss was accepted, yet it was because, as found by the Board, it was based upon actual experience over a long period of years. In such connection the Board in its opinion said in part:

* * * Each year a physical inventory was carefully made by an officer and director of the petitioner, who actually counted and recorded all the lumber in stock. The amount of the loss determined for each year was arrived at with the same precision and care, and represents in our opinion the best estimate which could be obtained. The fact that this estimate was stated in terms of a percentage does not detract from the uniformity or consistency of the method used. * * *

Without going into any further analysis of the cases cited by the petitioner, we are of the opinion that none of them support the doctrine contended for by it as applied to the facts in this case. Were the petitioner a dealer in finished products and not a manufacturer whose stock in trade was so largely made up of goods in varying stages of production, we might feel inclined to accept some of the views so earnestly urged; but from the view we take of the facts here, the so-called losses by which it seeks to reduce the value of its closing inventory for the taxable year must be considered as part of the cost of its products in the course of manufacture and not deductible as losses in that year.

*Decision will be entered for the respondent.*